```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
KINGVISION PAY-PER-VIEW, LTD.
as Broadcast Licensee of the OCTOBER 2, 2004
TRINIDAD/MAYORGA Program,
```

                                       **Plaintiff,**        **REPORT AND**
                                                             **RECOMMENDATION**
    -against-

                                                                        **CV 05-3032 (NGG) (SMG)**

**JOSE JIMENEZ,** Individually and d/b/a AL AZTECA
RESTAURANT a/k/a AZTECA RESTAURANT a/k/a
AZTECA, and **AL AZTECA RESTAURANT** a/k/a
AZTECA RESTAURANT a/k/a AZTECA,

                                        **Defendants.**
------------------------------------------------------------------------X
**GOLD, S., U.S.M.J.:**

## Introduction

       Plaintiff, Kingvision Pay-Per-View, Ltd. ("Kingvision"), brings this action alleging that defendants, Jose Jimenez, individually and d/b/a Al Azteca Restaurant a/k/a Azteca Restaurant a/k/a Azteca ("Azteca Restaurant"), and Azteca Restaurant, unlawfully intercepted and misappropriated a closed circuit television exhibition of a boxing match held on October 2, 2004 between Trinidad and Mayorga (the "event") in violation of the Federal Communications Act of 1934, codified as amended, 47 U.S.C. §§ 553 and 605. Compl. ¶¶ 1, 12, 15. More specifically, plaintiff alleges that defendants intercepted and received the event without paying the required fees, and displayed it to the patrons of Azteca Restaurant. Compl. ¶ 15.

       Upon plaintiff's application and in light of defendants' failure to appear or otherwise defend in this action, the Clerk of the Court entered the default of defendants on December 16, 2005, and the Honorable Nicholas G. Garaufis referred this case to me for report and recommendation on the issue of damages as to the defaulting defendants. See Docket Entries 7,

8. Plaintiff has submitted a memorandum of law, dated December 10, 2005 ("Pl. Mem."), the affidavit of Donna K. Westrich, vice president of Kingvision, dated November 17, 2005 ("Westrich Aff."), an affidavit from an independent auditor, Cosmo Lubrano ("Lubrano Aff."), and the affidavit of Julie Cohen Lonstein, plaintiff's counsel, dated December 9, 2005 ("Lonstein Aff.") in support of its application for statutory damages and attorneys' fees and costs. Docket Entry 6. Defendants have not submitted any opposition to the relief sought by plaintiff.

## Facts

Kingvision owns the distribution rights to the event which was broadcast via closed circuit television and encrypted satellite signal on October 2, 2004. Compl. ¶ 12; Pl. Mem. p. 2. Plaintiff entered into agreements with various commercial establishments in New York, allowing them to exhibit the event to their patrons in exchange for a fee. Compl. ¶¶ 13-14; Pl. Mem. p. 2. Defendants did not contract with plaintiff to legally broadcast the event. Pl. Mem. p. 2; Westrich Aff. ¶ 6.

Plaintiff hired an investigative agency, Signal Auditing, Inc., to visit various commercial establishments in the New York City area on the night of October 2, 2004, to identify establishments that unlawfully exhibited the event. Pl. Mem. p. 2; Westrich Aff. ¶¶ 4-5. An investigator witnessed the event being displayed on two television sets at Azteca Restaurant. See Pl. Mem. pp. 2-3; Westrich Aff. ¶ 7; Lubrano Aff. Plaintiff asserts that defendants used unauthorized decoding equipment to intercept the event without paying a fee to plaintiff. Compl. ¶ 16; Westrich Aff. ¶¶ 6, 10.

**Discussion**

A.   Liability

Once a default judgment is entered, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability.  See Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Montcalm Pub. Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992).

The allegations of plaintiff's complaint clearly establish the elements of liability required to state claims under both 47 U.S.C. §§ 553(a)(1) and 605(a).  Under Section 553(a)(1), "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."  47 U.S.C. § 553(a)(1).  Section 553(a)(1) was intended by Congress to apply specifically to "'theft of services offered over a cable system[.]'" Int'l Cablevision, Inc. v. Sykes, 997 F.2d 998, 1008 (2d Cir. 1993) ("Sykes I") (emphasis in original) (quoting H.R. Rep. No. 934, at 83 (1984)).  Thus, Section 553(a)(1) applies only to "'theft of a service from the point at which it is actually being distributed over a cable system.'" Id.  Although they originate as satellite signals, plaintiff's transmissions are distributed via cable, and thus fall within the scope of Section 553(a)(1).  See Compl. ¶ 12; Int'l Cablevision v. Sykes, 75 F.3d 123, 133 (2d Cir. 1996) ("Sykes II") (noting that Section 553(a) applies to any cable transmission, regardless of its origin).  The plaintiff alleges that defendants illegally intercepted the event broadcast via cable and that they may have used one of the following methods: use of an illegal cable converter box or device, misrepresentation of a commercial establishment as a residence, or use of an illegal cable splice.   Compl. ¶ 31; Westrich Aff. ¶ 10.  These acts

3

constitute violations of § 553(a)(1). See Sykes I, 997 F.2d at 1003 (noting that the use of illegal converter boxes is a violation of Section 553(a)(1)). Thus, plaintiff has established defendants' liability for a violation of Section 553(a)(1).

Section 605(a) is broader than Section 553(a)(1). Section 605(a) provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. § 605(a). Section 605(a), which by its express terms prohibits unauthorized interception of interstate wire communications, has been held applicable to thefts of cable communications, provided that the cable programming originated as a radio communication. See Sykes II, 75 F.3d at 131 & n.5. Plaintiff alleges that the transmission of the event originated as a satellite communication and was transmitted via satellite signal. Compl. ¶ 12; Pl. Mem. p. 4. See also Kingvision Pay Per View, Ltd. v. Williams, 1 F. Supp. 2d 1481, 1484 (S.D. Ga. 1998) (noting that, under Section 605(a), "[t]he term 'radio' includes satellite transmissions.") (citing Nat'l Football League v. Alley, Inc., 624 F. Supp. 6, 9 (S.D. Fla. 1983)). As the cable transmissions here originated and were transmitted as satellite communications, Section 605(a) applies to defendants' interception of plaintiff's signal. Plaintiff alleges that defendants may have used one of the following methods to intercept the satellite broadcast of the event: use of an illegal satellite receiver, misrepresentation of a commercial establishment as a residence, use of an illegal decryption device, or an illegal purchase of satellite authorization codes. Compl. ¶¶ 15-16; Westrich Aff. ¶ 10. Plaintiff has properly pleaded a claim under Section 605(a) and defendants are thus deemed liable to plaintiff for violating this provision.

B.  Damages

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. See Greyhound Exhibitgroup, 973 F.2d at 158. Rather, claims for damages generally must be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed. See id. Thus, a court must ensure that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded. See Fustok v. Conticommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989). A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. See FED. R. CIV. P. 55(b)(2); Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991); Fustok, 873 F.2d at 40. Plaintiff in this case seeks an award of statutory damages, attorney's fees and costs. See Pl. Mem. pp. 9-10. Defendants have not submitted any opposition. Accordingly, a hearing is not warranted.

Where liability has been established under Sections 553(a)(1) and 605(a) of the Federal Communications Act, recovery under both sections is impermissible. See New Contenders, Inc. v. Diaz Seafood Corp., 96 Civ. 4701, 1997 WL 538827, at *1 (S.D.N.Y. Sept. 2, 1997). Rather, a court should award damages pursuant to Section 605 because it provides for greater recovery than Section 553. Time Warner Cable v. Taco Rapido Rest., 988 F. Supp. 107, 110 (E.D.N.Y. 1997); see Sykes II, 75 F.3d at 127.

A claimant who has established liability under Section 605(a) may elect between actual damages plus defendant's profits, if any, or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i)(II). Where a party elects to recover statutory damages, it may recover an award from $1,000 to

5

$10,000 for each violation of Section 605(a). See 47 U.S.C. § 605(e)(3)(C)(i). An additional $100,000 in enhanced damages is available where the violation was willful and was committed for commercial advantage or financial gain. See 47 U.S.C. § 605(e)(3)(C)(ii); see also Am. Cablevision v. McGinn, 817 F. Supp. 317, 320 (E.D.N.Y. 1993) (citing Cablevision Sys. Corp. v. Maxie's North Shore Deli Corp., No. 88 Civ. 2834, 1991 WL 58350 (E.D.N.Y. Mar. 20, 1991)).

The amount of damages to be awarded pursuant to Section 605 rests in the sound discretion of the court. See 47 U.S.C. § 605(e)(3)(C)(i)(II) (providing for an award "as the court considers just"); see also Taco Rapido Rest., 988 F. Supp. at 111. An award of damages pursuant to Section 605 should be based in part on the commercial gain derived from illegal broadcasts. One method courts use to determine commercial gain is to assess a per customer charge based upon the number of patrons in the establishment at the time of the broadcast. See, e.g., id. (awarding damages on a per patron basis); Cablevision Sys. Corp. v. 45 Midland Enters., Inc., 858 F. Supp. 42, 45 (S.D.N.Y. 1994) (same). Plaintiff has submitted evidence that approximately 70 patrons were present during the illegal broadcast. See Lubrano Aff. I recommend that plaintiff be awarded $50 per patron. See, e.g., Taco Rapido Rest., 988 F. Supp. at 111 (awarding $50 per patron); 45 Midland Enters., 858 F. Supp. at 45 (same). Accordingly, damages should be awarded in the amount of $3,500.

Plaintiff also seeks an enhanced damages award of up to $100,000 pursuant to Section 605(e)(3)(C)(ii), asserting that defendants' acts were willful and committed for financial gain. The Supreme Court has defined willfulness as "disregard for the governing statute and an indifference for its requirements." Transworld Airlines, Inc. v. Thurston, 469 U.S. 111, 126-27, 105 S.Ct. 613, 624 (1985) (quoted in Cablevision v. Lokshin, 980 F. Supp. 107, 114 (E.D.N.Y.

6

1997)).  The broadcast of an event without authorization is a deliberate act, and thus establishes willfulness.  See Taco Rapido Rest., 988 F. Supp. at 111 ("In order for [defendant] to receive the closed-circuit broadcast, it had to have engaged in some deliberate act, such as using an unauthorized decoder or altering the cable service in some way so as to receive and view the scrambled transmission."); Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems").  See also Westrich Aff. ¶ 10.  As plaintiff has pleaded that defendants displayed the event in a commercial establishment, the statutory damage enhancement applicable to willful violations committed for financial gain is available in this case.  See 47 U.S.C. § 605(e)(3)(C)(ii).

Courts use a variety of factors in determining whether a defendant's willful conduct justifies enhanced damages.  These factors include: (i) repeated violations; (ii) significant actual damages suffered by plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising for the event; and (v) defendant's collection of a cover charge or premiums for food and drinks.  Kingvision v. El Rey Del Bistec Y Caridad, Inc., No. 01 Civ. 6562, 2001 WL 1586667, at *2 (S.D.N.Y. Dec. 12, 2001).

These factors do not support a significant enhanced damages award in this case.  With respect to the first two factors, plaintiff has not alleged that defendants engaged in illegal piracy on any another occasion or that Kingvision has sustained substantial actual damages.  Plaintiff has submitted a Kingvision memorandum which indicates the fee for commercial establishments to broadcast the event was $15 per seat based on the fire code occupancy of the establishment, plus a $200 DirecTV authorization fee.  Westrich Aff., Ex. B.  Plaintiff estimates the capacity of

7

Azteca Restaurant to be 100 people. Westrich Aff. ¶ 7; Lubrano Aff. Thus, actual damages in this case would be $1700. Plaintiff, however, further alleges that it generally has experienced a "serious erosion of [pay-per-view broadcast] sales to commercial establishments" due to piracy, costing plaintiff "millions of dollars in the last few years." Westrich Aff. ¶¶ 11, 15. Turning to the last three factors, the affidavit of plaintiff's investigator does not support a large statutory damage enhancement award. Lubrano Aff. There is no evidence of substantial unlawful monetary gains by defendant. There is no evidence that defendants advertised or otherwise promoted the fight. Lastly, plaintiff's investigator reported that he did not pay a cover charge to enter Azteca Restaurant. Id. In sum, plaintiff has failed to establish that the defendants profited substantially or derived significant revenue by showing the event.

Nonetheless, the violation was willful. Therefore, I respectfully recommend an award of $10,000 for defendants' willful violation of the statute. This amount, together with the $3,500 in statutory damages, is sufficient to both redress the harm caused by defendants' activities, as well as to deter future violations, particularly where, as here, there is no indication that Azteca Restaurant is particularly profitable.

C.   Attorney's Fees and Costs

Plaintiff also seeks to recover its attorney's fees and costs. An award of fees and costs is mandatory pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). In this Circuit, all claims for attorney's fees must be supported by contemporaneous time records that show, "for each attorney, the date, the hours expended, and the nature of the work done." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). Plaintiff seeks to recover $1250 in attorney's fees for 5.5 hours of attorney work and 2.0 hours of paralegal work. Lonstein Aff. ¶ 4. This

amount appears reasonable and is supported by contemporaneous time records.  Finally, plaintiff seeks to recover costs in the amount of $800, including $250 for filing fees, $200 for the cost of service of process and $350 for investigation costs.  See Lonstein Aff. ¶ 3.  This amount appears reasonable and is substantiated by documentary evidence.  Westrich Aff., Ex. E; Lonstein Aff., Ex. A.  Accordingly, I respectfully recommend that plaintiff be awarded $1250 in attorney's fees and $800 for costs incurred in connection with this litigation.

## Conclusion

For the foregoing reasons, I respectfully recommend that default judgment be entered against the defaulting defendants, jointly and severally, in the total amount of $15,550, composed of $13,500 in statutory damages and $2,050 in fees and costs.

Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Chambers of the Honorable Nicholas G. Garaufis within ten days of receiving this Report and Recommendation and, in any event, on or before September 20, 2006.  Failure to file timely objections may waive the right to appeal the District Court's Order.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

Plaintiff is hereby directed to serve copies of this Report and Recommendation upon defendants at their last known addresses, and to file proof of service with the Court.

/s/
**Steven M. Gold**
**United States Magistrate Judge**

**Brooklyn, New York**
**September 6, 2006**

U:\AJB 2006\Kingvision v. Al Azteca\jimenez final.wpd